UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH TROTTA                                        CIVIL ACTION

VERSUS                                                   NO. 15-1186

CAJUN CONTI, LLC, ET AL                      SECTION "R" (2)


## ORDER AND REASONS

Defendants Cajun Conti, LLC and Cajun Bourbon, LLC move[1] for summary judgment on Plaintiff Joseph Trotta's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Because plaintiff has failed to create an issue of fact as to whether there is a causal link between plaintiff's protected activity and his termination, plaintiff cannot establish a prima facie case of retaliation and the Court GRANTS defendants' motion.


## I.     BACKGROUND

This case arises from the termination of Joseph Trotta's employment with defendants Cajun Conti, LLC, and Cajun Bourbon, LLC.  Defendants are

---

[1]        R. Doc. 57.

two restaurants in the French Quarter in New Orleans, Louisiana.[2]  In March of 2013, plaintiff was hired as an at-will employee to work as a manager at both restaurants.  While employed by defendants, plaintiff reported directly to Ramsey Dibeh, the Director of Operations for defendants,[3] and then to Rami Badr, the Vice President of Operations for defendants.[4]  On August 3, 2014, Dibeh notified Trotta that his employment with defendants was terminated.[5]  Trotta filed this suit on April 14, 2015.[6]

The parties dispute why Trotta was terminated.  Defendants submit the sworn declarations of Rami Badr and Ramsey Dibeh, who attest, and Trotta does not dispute,[7] that throughout the duration of Trotta's employment, Trotta was frequently reprimanded for various performance issues.[8]  Badr and Dibeh also attest that in early August, 2014, they learned that a former employee filed a charge of discrimination with the Equal Employment

---

[2]     R. Doc. 57-4 at 1 ¶ 3.  Cajun Conti does business as Oceana Grill and Cajun Bourbon does business as Olde Nola Cookery.

[3]     R. Doc. 57-9 at 1.

[4]     R. Doc. 57-4 at 1.

[5]     *Id.* at 2 ¶ 10.

[6]     R. Doc. 1.

[7]     *See* R. Doc. 57-5 at 36 (Deposition of Joseph Trotta); *see also* R. Doc. 62-1 at 1-4 at ¶¶ 9-10, ¶¶ 12-14, ¶¶ 17-19 (Plaintiff's Response to Defendants' Statement of Material Facts).

[8]     *See* R. Doc. 57-4 (Declaration of Rami Badr); R. Doc. 57-9 (Declaration of Ramsey Dibeh).

Opportunity Commission that alleged that Trotta sexually harassed her.[9]

Therefore, defendants assert that Trotta was fired because another employee

accused Trotta of sexual harassment and because he frequently displayed

poor work performance, including but not limited to:

> (1) failing to keep the stove and kitchen clean and sanitary under his management, (2) failing to ensure items were put away in the kitchen, (3) failing to maintain the courtyard, (4) failing to restock the kitchen, (5) failing to maintain quality food presentations, (6) failing to provide good customer service under his management, (7) failing to communicate with his co-workers, (8) demonstrating poor leadership, including the claim of sexual harassment by another employee, (9) failing to exercise control over his subordinates, and (10) leaving the petty cash safe short $100 on his shift.[10]

Trotta argues that his performance issues and the sexual harassment claim

are pretextual and that Trotta was actually terminated because he gave a

statement to the EEOC regarding defendants' termination of another

employee, Arthur Alexander.[11]

According to Trotta's declaration, on or about June 2, 2014, Dibeh

instructed Trotta to terminate Alexander, despite Trotta's belief that

Alexander had done nothing wrong.[12]   After Alexander's termination, on

---

[9]      R. Doc. 57-4 at 2 ¶ 9; R. Doc. 57-9 at 2 ¶ 9.
[10]      R. Doc. 57-4 at 1-2 ¶ 7, ¶ 10; R. Doc. 57-9 at 1-2 ¶ 6, ¶ 9; R. Doc. 57-15 at 1-2 ¶ 9.
[11]      R. Doc. 23 at 5 ¶ 25.
[12]      R. Doc. 62-3 at 1 ¶¶ 4-5.

June 24, 2014, Alexander filed an EEOC charge of discrimination against Cajun Bourbon, alleging that he was discriminated against because of his race.[13]   Trotta attests that he went to the EEOC office with Alexander and gave a declaration on Alexander's behalf.[14]   Trotta did not tell anyone of his involvement with Alexander's claim besides coworker Neely Hargis,[15] and Hargis testified at his deposition that he told no one of Trotta's involvement.[16]   Trotta also acknowledged that he had no evidence that defendants knew of his involvement with Alexander's claim when he was terminated.[17]   Dibeh, Badr and Tiffany Thoman, the Executive Administrator and corporate deponent for defendants, all attest that they did not become aware of Trotta's involvement in the Alexander charge until after Trotta was terminated.[18]   Thoman also testified in her deposition that defendants became aware of Alexander's EEOC claim on the same day they became aware that Trotta was accused of sexual harassment.[19]

---

[13]    R. Doc. 62-17 (Sealed).

[14]    R. Doc. 62-3 at 1 ¶ 5.

[15]    R. Doc. 57-6 at 39-40.

[16]    R. Doc. 57-13 at 4.

[17]    R. Doc. 57-6 at 41-45.

[18]    R. Doc. 57-4 at 2 ¶ 12; R. Doc. 57-9 at 2 ¶ 11; R. Doc. 57-15 at 2 ¶ 10.

[19]    R. Doc. 57-11 at 10-11.

Plaintiff asserts a claim for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Defendants now move for summary judgment.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, Fed. Prac. and Proc. Civ.2d § 2738 (1983)).

5

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal quotation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

6

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

### B.    Retaliation Under Title VII

In addition to prohibiting discrimination in employment on the basis of race, color, religion, sex, or national origin, Title VII also makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII, 42 U.S.C. § 2000e-3(a).  In order to state a prima facie retaliation claim, a plaintiff must allege "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

The Fifth Circuit has held that if the plaintiff does not have direct evidence of retaliation, then the *McDonnell Douglas* burden-shifting framework applies to the retaliation claim.  *See, e.g.*, *Satterwhite v. City of Houston*, 602 F. App'x 585, 587 (5th Cir. 2015) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).  If the plaintiff makes a prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.  *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  If

the defendant meets his or her burden of production, the burden shifts back to the plaintiff to show that defendant's explanation is a pretext for unlawful retaliation. *Id.* A plaintiff who cannot establish a prima facie case cannot survive a summary judgment challenge. *Byers*, 209 F.3d at 427.

## III.   DISCUSSION

Defendants' motion for summary judgment argues that Trotta cannot make out a prima facie retaliation claim, and that even if Trotta has established a prima facie claim, Trotta cannot establish that defendants' stated reason for termination was pretextual.

### A.   Trotta's Prima Facie Claim

#### 1.   *Protected Activities*

Trotta attests that he gave a declaration to the EEOC on behalf of former coworker Arthur Alexander. This qualifies as protected activity under the statute, and defendants concede that Trotta engaged in protected activity.[20] *See* 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer to discriminate against anyone who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

---

[20]      R. Doc. 57-1 at 7 n.38 ("Defendants will not dispute that Plaintiff engaged in protected activity under Title VII.").

under this subchapter"). Thus, Trotta has established the first element of his prima facie case of retaliation.

### 2.   *Materially Adverse Employment Action*

Next, Trotta must show that defendants took an "adverse employment action" against him. *Aryain*, 534 F.3d at 484. In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged employment action "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotation marks omitted). An employment action is not materially adverse if it amounts only to "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Trotta asserts that the defendants engaged in two retaliatory acts: (1) reassigning Trotta to work the kitchen at Oceana Grill between late June and August of 2014;[21] and (2) terminating Trotta's employment. Defendant

---

[21]   Trotta states in his opposition brief that he was reassigned on June 30, 2014. R. Doc. 62 at 6; R. Doc. 62-1 at 4 ¶ 5. His declaration, however, does not mention the reassignment and Trotta gave conflicting deposition testimony on when the reassignment took place. *Compare* R. Doc. 62-4 at 3 (when asked when he reassigned, Trotta responds "It was, I believe, in–maybe started in June of–I don't remember the year, 2014 probably) *with* R. Doc. 57-5 at 50 (when asked if he was reassigned in July,

concedes that Trotta's termination was an adverse employment action but disputes that Trotta's reassignment was adverse.[22]  Therefore, while it is clear that Trotta suffered adverse employment action, because temporal proximity between the adverse action and the protected activity is relevant for the third element of the prima facie case, *see, e.g.*, *Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001), the Court must resolve whether Trotta's reassignment was adverse to determine the date of the adverse employment action.

Trotta argues in his opposition brief that the reassignment is adverse because he was allegedly instructed to not move for twelve hours while in his new position, and that defendants previously used a transfer to the kitchen as a form of punishment for another employee.[23] Trotta also points to the deposition testimony of Neely Hargis, who testified that while at Oceana, Trotta was treated differently than other managers and that Hargis witnessed Trotta standing in one position for extended periods of time.[24]

---

Trotta responds "I believe that's true," and when asked if it was correct to say that Trotta was assigned at Oceana between July and August of 2014, Trotta responds "yes, I believe so.").  Therefore, the exact date of Trotta's reassignment to Oceana is unclear from the record.

[22]   R. Doc. 57-1 at 7 n.38.

[23]   R. Doc. 62 at 5-7.

[24]   R. Doc. 62-5 at 6-7.

Further, Trotta points to an email in the record from Dibeh to Trotta sent on February 4, 2014, where Dibeh threatens to keep Trotta at Oceana for good.[25]

Defendants counter that Trotta initially requested a transfer to the kitchen to receive training in early 2014,[26] and he was initially transferred to Oceana after his request.[27] Defendants also assert that Trotta received the same salary while at Oceana that he did as manager,[28] and that Trotta admitted in his deposition that he never actually stood in one place for twelve hours.[29]

As described above, the Supreme Court has instructed that the action complained of must be materially adverse in that the action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Further, the Court has noted that "[c]ontext matters" and that whether an action is materially adverse will depend upon the particular circumstances of the employee and the case. *Id.* at 69. Additionally, the Fifth Circuit has noted that a "lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances," and has looked to whether the new position was

---

[25]   R. Doc. 57-7 at 7.
[26]   R. Doc. 57-5 at 40.
[27]   *Id.* at 41.
[28]   *Id.*
[29]   R. Doc. 57-6 at 30-36.

objectively more arduous or less prestigious, whether the new position had worse hours, whether it would objectively be viewed as a demotion or as embarrassing, and whether the new position stripped the employee of "significant responsibilities." *Aryain*, 534 F.3d at 485 (citations omitted); *see also Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001).

On this record, drawing all reasonable inferences in favor of Trotta, the Court cannot find that there is a genuine issue of material fact that the reassignment to the kitchen at Oceana was a materially adverse action. The evidence suggesting that Trotta was made to stand in one place for twelve hours is undercut by Trotta's own admissions that he never actually stood in one place for twelve hours at a time and that while he was working in the kitchen he was also working in the restaurant itself for at least part of the time.[30] And while Trotta may certainly have been standing in one place for a period of time while at Oceana, this is not uncommon for employees in a kitchen. The Fifth Circuit has held that physical activity which is routine to a job does not automatically make a transfer to that job materially adverse. *See Aryain* at 486 (finding assignment to position in which employee would need to constantly pick up, lift, and carry supplies not materially adverse because job description indicated those tasks would be required). Nor does

---

[30]   R. Doc. 57-6 at 30-36.

an increased work load.  *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

Additionally, the evidence in the record is undisputed that Trotta initially requested to work in the kitchen, and that he viewed the time spent in the kitchen as "valuable."[31]  The evidence that defendants transferred another employee to the kitchen as a punishment and Dibeh's February email threatening to keep Trotta in the kitchen, in light of the competing evidence in the record that Trotta himself requested to be in the kitchen at that time, do not create a genuine issue of material fact as to whether the reassignment was materially adverse.   Trotta puts forth no evidence suggesting that his pay was reduced (and concedes it was not), that his hours were worse at the kitchen, that the transfer was objectively embarrassing, the he objected to his transfer at the time, or that he was stripped of significant responsibilities.  *Id.*; *see also Aryain*, 534 F.3d at 485.  Given that Trotta initially requested to work in the kitchen, that he viewed the time there as valuable, and that his schedule, full-time status and salary were unchanged, the record as a whole does not indicate a genuine issue of material fact that this reassignment would cause a reasonable worker to be dissuaded from supporting a charge of discrimination, *White*, 548 U.S. at 68, and therefore

---

[31]    R. Doc. 57-5 at 41-42.

his reassignment to the kitchen was not an adverse employment action. *See Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 849 (W.D. Pa. 2016) (granting summary judgment on plaintiff's retaliation claim because transfer to new position so that plaintiff could receive requested training was not materially adverse); *Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 270 (11th Cir. 2009) (finding that reduction in responsibility alone does not amount to adverse employment action).

Still, his termination was certainly adverse, so the Court will proceed to the third element of the prima facie case.

### 3.   Causation

Trotta must also demonstrate a causal connection between his protected activity and his termination.  In establishing the causal link, Trotta is not required to show that his protected activity was the "sole factor motivating the employer's challenged decision," *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002), but the plaintiff must produce some evidence showing that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity."  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  Dibeh, Badr, and Thoman all attest that they had no knowledge of Trotta's involvement in Alexander's

EEOC claim until after Trotta was terminated.[32]   Trotta does not dispute that he did not tell Dibeh or Badr of his involvement with Alexander's claim before his termination,[33] Trotta admits that he told only Hargis of his involvement,[34] and Hargis testified at his deposition that he did not tell anyone of Trotta's involvement in Alexander's claim.[35] Finally, Trotta admits that he has no evidence that either Dibeh or Badr knew of his protected activity before his termination.[36] Therefore, there is no direct evidence in the record showing or even suggesting that defendants were aware of Trotta's protected activity at the time of his termination.

In an attempt make up for this lack of evidence, Trotta relies primarily on the temporal proximity of his statement to the EEOC on June 24, 2014 and his termination on August 3, 2014, alleged inconsistencies relating to when defendants became aware of the complaints of both Alexander and the employee who accused Trotta of sexual assault, as well as a statement allegedly made to Trotta by Alexander before his termination, and by Badr to Trotta after his termination.[37]

---

[32]    R. Doc. 57-4 at 2 ¶ 12; R. Doc. 57-9 at 2 ¶ 11; R. Doc. 57-15 at 2 ¶ 10.

[33]    R. Doc. 57-6 at 39-40.

[34]    *Id.*

[35]    R. Doc. 57-13 at 29.

[36]    R. Doc. 57-6 at 41, 45.

[37]    R. Doc. 62 at 7-11.

At the outset, plaintiff is wrong to suggest that temporal proximity *alone* is sufficient to establish the third element of the prima facie case. It is true that the Fifth Circuit considers the temporal proximity between protected activity and adverse employment actions in determining if a causal link exists, *see, e.g.*, *Evans*, 246 F.3d at 354; *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), but the Fifth Circuit has also repeatedly (as well as recently) found that temporal proximity by itself is not sufficient to establish the causal link for the third element of the prima facie case. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 493-94 (5th Cir. 2002) (finding that despite temporal proximity between alleged protected activity and alleged retaliation, the absence of "any evidence" connecting the activity with the retaliation indicated there was no genuine issue of material fact as to issue of causal connection); *Thompson v. Somervell Cty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011) (per curiam) ("[E]ven at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity."); *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 226 (5th Cir. 2015) (per curiam) ("[S]ince '[t]he record contains nothing connected the allegedly protected activity and the alleged retaliation,' mere proximity in time, without more, cannot establish a prima facie case." (citing *Zaffuto*, 308 F.3d at 493)); *see also*

16

*Butler v. Shinseki*, No. 10-0857, 2011 WL 3419619, at *7 (E.D. La. Aug. 4, 2011) (stating that "under Fifth Circuit law, a plaintiff cannot rely solely on temporal proximity to establish [his or] her prima facie case").  Additionally, the Supreme Court has suggested that mere temporal proximity alone, without evidence of the employer's knowledge of the protected activity, cannot establish the causal link.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that "[t]he cases that accept mere temporal proximity *between an employer's knowledge of the protected activity* and an adverse employment action as sufficient evidence of causality to establish a prima facie case . . .").

The cases cited by plaintiff in opposition, *Evans v. City of Houston* and *Richard v. Cingular Wireless LLC*, 233 F. App'x 334 (5th Cir. 2007), merely establish, as acknowledged above, that temporal proximity is relevant for the third element of the prima facie case. But neither *Evans* nor *Cingular* stand for the proposition that temporal proximity alone satisfies the causal element, and both *Evans* and *Cingular* had evidence in the record that the employer had knowledge of the protected activity.  *See Evans*, 246 F.3d at 352 n.7 (noting that city was aware of employee's testimony about racial discrimination hearing before adverse action); *Cingular*, 233 F. App'x at 335-36 (evidence indicated that Cingular was aware of plaintiff's protected

17

activity before his termination because plaintiff had complained to Cingular's internal Ethics Line about purported racial discrimination before his termination). Therefore, in light of the above case law, the Court does not find that the temporal proximity of 40 days between Trotta's protected activity and his termination alone satisfies the third element of the prima facie case.

The Fifth Circuit has also repeatedly held that to establish a prima facie retaliation claim, plaintiffs must show at least some evidence that the decisionmakers responsible for the adverse action "had knowledge of [plaintiff's] protected activity. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003); *see also, e.g.*, *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001); *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) ("Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge."). As described above, Dibeh, Badr, and Thoman all attest to their lack of any knowledge of Trotta's protected activity before his termination, and Trotta has put forth no direct evidence (and has conceded he has none) of their knowledge before his termination. Trotta also does not argue that there were other decisionmakers responsible for his termination. Instead, Trotta suggests that the Court should reject the evidence in the record and infer defendants'

18

knowledge based on 1) an alleged statement from Alexander to Trotta on approximately July 25, 2014 that his EEOC claim was going to mediation;[38] 2) alleged inconsistencies over when defendants became aware of the EEOC complaints;[39] and 3) a statement by Badr to Trotta three days after Trotta was terminated.[40]   None of these create a reasonable inference that the decisionmakers knew of Trotta's protected activity before he was terminated, especially in light of the other evidence in the record.

First, Trotta relies on Alexander's alleged statement for the truth of the matter asserted and is therefore hearsay and not competent summary judgment evidence. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) ("[b]ecause these statements are hearsay, they are not competent summary judgment evidence"); *see also* Fed. R. Civ. P. 56(c)(2) ("a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). There is no testimony from Alexander in the record, or any other competent evidence in the record showing that Alexander's case was set for mediation by July 25, 2014.  Even if there were, that Alexander possibly said his case

---

[38]   R. Doc. 62-3 at 1 ¶ 6.
[39]   R. Doc. 62 at 9-10.
[40]   R. Doc. 62-3 at 2 ¶ 14.

was going to mediation in late July does not suggest the defendants were aware of Trotta's involvement in Alexander's case.

Because Alexander's statement is hearsay, Trotta also cannot rely on it to argue that Thoman's deposition testimony that defendants set up Alexander's mediation in early August[41] is inconsistent with the facts.  Next, Trotta points to Title 29 of the Code of Federal Regulations to suggest that by law defendants should have been notified of Alexander's claim and the sexual harassment claim against Trotta before August, and therefore Dibeh, Badr, and Thoman's deposition testimony and declarations are inconsistent with the facts.  According to Title 29, defendants should have been notified of each charge within ten days of the filing of the charge.  *See* 29 C.F.R. § 1601.14.   Though Trotta submits a copy of Alexander's charge with his opposition to this motion,[42] Trotta does not provide any documentary evidence of defendants' actual receipt of the charge.  While it may be true that defendants *should have* been notified, there is competent evidence in the record indicating that they were not notified within 10 days.[43]  Trotta provides no basis to reject Thoman's sworn deposition testimony that

---

[41]   R. Doc. 62-6 at 6-8.
[42]   R. Doc. 62-17 (Sealed).
[43]   R. Doc. 62-6 at 6.

defendants were not notified within 10 days of Alexander's charge.[44] Further, even if defendants were notified that Alexander had filed a claim, this does not establish that they would have also been notified of Trotta's involvement. Trotta points to nothing suggesting that notice of Alexander's claim included information about Trotta's involvement. Indeed, Alexander's claim itself makes no mention of Trotta's involvement in giving a declaration in support of Alexander.[45]

Finally, Trotta points to a meeting he had with Badr three days after he was terminated to suggest that Badr was aware of his protected activity. Trotta testified that after Dibeh terminated him, Trotta sent a text message to Badr expressing his belief that he was terminated because of his statement to the EEOC.[46] Trotta did not name Alexander in the text.[47] Three days after Trotta was terminated, Trotta met with Badr, and according to Trotta's testimony Badr brought up Alexander (despite Trotta's not naming him in the text or mentioning his name) and asked Trotta "why didn't you just come to me first?"[48]  From this one question, Trotta attests that he "understood

---

[44]   *Id.*
[45]   R. Doc. 62-17 (Sealed).
[46]   R. Doc. 57-6 at 38.
[47]   R. Doc. 57-8 at 35.
[48]   *Id.* at 43.

Badr to mean why didn't I come to him first before giving a statement to the EEOC on behalf of Arthur Alexander."[49]

Even if evidence showed that Trotta was correct and what Badr meant by the statement was to ask Trotta why he did not go to Badr before Trotta went to the EEOC, this still would not suggest that defendants were aware of Trotta's protected activity before his termination.  By the time the meeting between Badr and Trotta occurred, Trotta had already been terminated, he already texted Badr that he believed he was terminated because of his involvement in an EEOC claim, and defendants had been made aware that they had two EEOC claims against them, one which was a complaint against Trotta.  Moreover, Trotta admitted in his deposition that he did not have "any information or any evidence that Rami [Badr] knew that [Trotta] had been interviewed by the EEOC before [Trotta] sent th[e] text message."[50]

Again, Dibeh, Badr, and Thoman all swear that they were not aware of Trotta's involvement before his termination. Trotta admits that he has no direct evidence that any of them were aware of his involvement.  Trotta's arguments regarding temporal proximity and alleged inconsistencies are unavailing.  Therefore, because there is no evidence to rebut defendants'

---

[49]     R. Doc. 62-3 at 2 ¶ 14.
[50]     R. Doc. 57-6 at 45.

evidence attesting to their lack of knowledge, there is no genuine issue of material fact as to any causal link between the protected activity and the adverse employment action,[51] and Trotta cannot make out a prima facie case.[52]   Summary judgment is thus appropriate in defendant's favor.   *See Manning*, 332 F.3d at 883-84 (affirming summary judgment when plaintiff could not establish causal link in retaliation case because plaintiff's evidence did not show that decisionmakers were aware of protected activity before the adverse action); *Butler*, 2011 WL 3419619, at *7 (granting summary judgment because plaintiff failed to establish causal link in light of defendants' sworn affidavits that they were not aware of plaintiff's protected activity before adverse action occurred).

---

[51]    Because of the total lack of evidence as to the defendants' knowledge, Trotta would still not be able to make out his prima facie case even assuming *arguendo* that his transfer to the kitchen was an adverse employment action.

[52]    Because Trotta cannot make out a prima facie case, the Court will not address whether defendants had a legitimate, non-retaliatory reason for Trotta's termination or if any legitimate reason is a pretext for the actual retaliatory reason.   *See, e.g.*, *Butler*, 2011 WL 3419619, at *7.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion.


New Orleans, Louisiana, this  13th   day of January, 2017.

                    _Sarah Vance_
                    SARAH S. VANCE
            UNITED STATES DISTRICT JUDGE

24